Ms. Frank, when you are ready. Good morning. I'm Elaine Rodriguez-Frank and I represent Dr. Antonio Martinez. This is a very interesting case because we live in an island that is pretty small and with a large population. And what the agency is trying to withhold in this case is that physicians that work for the agency cannot have a private practice. Dr. Martinez was hired in 1999. He was a part-timer. He worked every two weeks, just eight hours. The question is whether he was removed because of his military service. Oh, yeah. We're going to get there. And you may disagree and he may disagree with the regulation concerning a separate practice, but that's the regulation and that's why he was removed. Well, we have a disagreement on that. There are no regulations on that. What they have is 14 principles. And if you read them, because we enclose them as part of the attachment, there is nothing that provides specifically for physicians. The only one that I can attach to this equation is number two, where it says that an employee cannot have any private gain. But Dr. Martinez was in a catch-22 situation because he had this patient that was treated both at the Veterans Administration Hospital but also within the HMO that she was a part of and that he was a part of, too. But there was a lot of examination on this point. And there was a rather specific finding that the patient was transferred from the veteran system to Mr. Martinez's insurance for his private benefit. Oh, that's not – well, that is a – if you read it that way, that is truly not correct. The lady went to both hospitals at the same time. And there is evidence that I included in the attachment that he even tried to lure her back to the Veterans Administration Hospital because he was closing down his office. But this is a court of appeals, Ms. Frank, and we have a finding of fact. And if it is supported by substantial evidence, we must affirm we don't find facts here. I know, Your Honor, but she made a wrong determination of facts in that case because she had before her, and there was evidence that was submitted, they didn't sit down the lady, the patient in this case, but we included among the evidence the showing that she was seen by him many times within the Veterans Administration Hospital at the same time that she was treated within his office. He didn't take her out. She was treated in both hospitals at the same time because she had double insurance. That's the way it is. Puerto Rico is very small, and the metropolitan area is smaller, and it is pretty difficult for a physician not to treat this person using two types if he has privileges within two or three hospitals. I guess here's my problem, counsel. Yes. You're focusing your argument and much of your briefing on whether it was proper to remove him for a self-referral. And even if I agreed with you 150% that Mr. Martinez shouldn't have been removed for that reason, that's not at all the issue before this court. I know. As I understand it, the only issue before this court is whether he was removed because of his military history. Even if I were to agree with you, I can't give him his job back or give him back pay on that basis. It's just not an issue that I can decide in this case. The only thing I can figure out is whether a substantial motivating factor for his removal was his military service. Can you turn now to that? I will address that. I will address that. Do remember that he started in the year 1999, and he was already reserved. He started having problems in the year 2003 as soon as his military time increased because the USA became more military active. And he was spending more time in his military duties than instead of the part-time that he had at that time. He was then clashing because there is evidence. I saw the case. I interrogated Rive Mora, who was his supervisor from the surgical standpoint, and he was having a lot of problems with Rive Mora. At the same time, the agency was encountering the problem that there was a larger female veteran population, so they needed a gynecologist on a much larger basis. But didn't they actually agree with that? And didn't they actually vote, the board, vote to hire him full-time? You're suggesting to me that they're not at all concerned. No. Because they know about these problems, conflict with military service, but then they decided to choose and hire him for full-time position, knowing all of that. Your Honor, that was by the finance committee. That was never notified to any of us. We learned about that through the discovery process, that they were planning to hire him. But that was not the choice of Dr. Agracia, who was the chief of staff. She was the one who had the option and who had before her a report drafted by three female employees who had drawn up a report advising the agency to form this women's clinic, which by now is in place as soon as they got rid of him, the women's clinic is in existence, and to hire a gynecologist that will substitute him. It says so. One of the findings of the lady is to hire another gynecologist to substitute him, due to his military history. So they were having problems with him. His military history was increasing, and they were bringing other part-timers, female part-timers, at the same time. At a point in time, there were three gynecologists on a part-time capacity. But the two ladies feuded, and they resigned from the agency. So they were stuck with Dr. Martinez in a sense that he was there. He was the permanent part-time employee. They started increasing his hours, and he tried to commit, but at the same time he was clashing with his supervisor who was constantly asking him, hey, I need you here. I have this problem. He's a good manager. Dr. Rivera-Mora is a good manager. Ms. Franklin, I'm looking here at the findings, and they say, I find that the appellant did not prove that his military service was a substantial and motivating factor. Instead, they said, it was the information about patient A that triggered the termination action. So it wasn't anything having to do with military. It was the other matter we've been discussing. But you and I really know that they're not going to say that it's his military history, the excuse that they're using. Because it was merely an excuse that conflict of law issue does not exist. It was never brought up in any of the meetings that he had. He had only been a permanent employee, full-time employee, sorry, for one year. So he had only attended one ethical training. The agency knew that because the 14 principles, as soon as he was terminated, they were given to all the physicians for them to sign because he was never aware of that. And the lady, Dr. Gracia, the one who recommended the chief of staff, she knew that that policy is not in existence. She's the first one that has a private practice and does work on the outside. She moonlights, too. And I included the evidence, and it was part of the process, of the discovery process. So finding out this ill-excused, ill-defined, and ill-administered conflict of law excuse was merely a pretext for the agency to terminate him. Right now, the gynecologist does not have any military history. The guy works full-time there and has never been part of the armed forces. And he's not the only physician that I have had to defend, in other cases, with the agency. And you must understand, from the agency standpoint, I understand what is going on. They have the pressure of the female veterans. An employee who's leaving constantly, River Mora, telling him, I want to contact your supervisor from the military to find out why are you out so much. And telling him every time that he saw him, I am watching you. So he felt pressure. Ms. Frank, I think we have your position. Would you like to save the rest of your time to respond to the government?  All right. Mr. O'Connell. May it please the court, this is a substantial evidence case. And substantial evidence does support the board's finding here that Dr. Martinez's military service did not play a substantial or motivating factor in his removal. In fact, what the record shows is that Dr. Martinez had his stay in court, and he simply failed to carry his burden of proof. What is the substantial evidence for the negative finding? Well, what the administrative judge found convincing were the timing of three events. And number one, they move him from a part-time position to a temporary full-time position in 2006. Then they vote the funds to make him a permanent full-time position. In other words, they were promoting him until the problem with the referral arose. Exactly. So those two things show that they want more Dr. Martinez until, after that, the events with respect to patient aid come to light. And it's only because of that that they remove him. So there's clearly enough evidence in this record for a reasonable person to have concluded that Dr. Martinez's military service was not a substantial or motivating factor in his removal. So unless there are questions, we'll rest on our brief. Thank you, Mr. O'Connell. Ms. Frank, do you have any rebuttal to Mr. O'Connell? Yes, I just want to point out something to you. There is a procedure for conflict of law that was never followed in this case, and it's in existence, and Dr. Agracia knows about it. She took it upon herself to get rid of this employee. I am going to tell you something. I saw this case at the first instance level, and as soon as the judge heard the word that there had been an instance of malpractice at a private hospital, her mind shut off. She couldn't see anything else except the fact that there was an instrument that was left on the inside of this lady. And I had to fight my way up. And she saw all of this, all of this. Her co-worker, a part-timer, another female gynecologist who sat down, she told the judge, I don't even know about those principles or any of conflict of interest. I don't understand them. There were five physicians who testified, none of which knew what the conflict of law specified. And even if it existed, she didn't follow the rules. Do you have anything to rebut the argument of the government? Yes, and in addition to that, you should know that the only thing that they have as evidence that he was allegedly going to be hired is a determination by a finance committee. And you and I, and you are government employees, that the wills of the government are pretty slow. So maybe a finance committee can meet. This court runs on time. No, but I'm telling you, finance, financially, if you need an employee, that takes a while. Until the funds exist, you cannot hire an employee. And the decision was allegedly done seven days, ten days before he was terminated. So he didn't know about it, and they really, really didn't have any other option. Because the only other person that was working there was a female part-timer, and they were having a lot of problems recruiting other gynecologists. Okay. Thank you, Ms. Frank. Thank you. Case is taken under advisement.